FILED
CLERK
JGK 12/19/2017
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MIKE OVADIA,

Plaintiff,

v.

J.P. MORGAN CHASE BANK,

Defendants.

17-CV-04929 (AYS)

100 Federal Plaza
Central Islip, New York

December 4, 2017

TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
BEFORE THE HONORABLE ANNE Y. SHIELDS
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff: EDWARD GELLER, ESQ.
Edward B. Geller, Esq., P.C.
15 Landing Way
Bronx, New York 10464

For the Defendants: CHANNING TURNER, ESQ.
Wilmer Cutler Pickering Hale & Dorr
7 World Trade Center
New York, New York 10007

Court Transcriber: SHARI RIEMER, CET-805
TypeWrite Word Processing Service
211 North Milton Road
Saratoga Springs, New York 12866

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

(Proceedings began at 10:36 a.m.)

THE CLERK: Calling 17-CV-4929, Ovadia v. J.P. Morgan Chase Bank. Please state your appearances for the record.

MR. GELLER: Good morning, Your Honor. Appearing for the plaintiff it's Edward Geller.

THE COURT: Good morning.

MR. TURNER: Good morning, Your Honor. Appearing for Chase is Channing Turner, T-U-R-N-E-R.

THE COURT: Good morning. Have a seat. You can both stay seated. Just make sure that you speak into the mic. Do you want to bring it near to you because it's all recorded. Just make sure the green light is on. Okay?

So you're here on your initial conference on this case. I see this is a case under the TCPA. Let me ask a few questions about the case. First of all, let me ask defense counsel. Were these calls made by an automated dialing system?

MR. TURNER: Your Honor, we've checked our records and after the time period -- after the date that plaintiff called Chase and asked for no more calls there were no automated dialing calls placed to the numbers alleged in the complaint.

THE COURT: Were there calls made or do you know?

MR. TURNER: There were calls made but none to the

numbers alleged in the complaint.

THE COURT: The over almost 300 calls?

MR. TURNER: I'm sorry.

THE COURT: The complaint has 274 and you're telling me that that didn't happen.

MR. TURNER: That didn't happen, Your Honor.

THE COURT: Okay. But you had automated calls made before that. Is that right?

MR. TURNER: Correct.

THE COURT: If the automated calls were made before that would that implicate the TCPA or no?

MR. TURNER: It would not, Your Honor.

THE COURT: Okay. Let me ask the -- let me stick with you for a moment. Are you planning on making any kind of a motion in this case? I mean on its face is there a motion to dismiss here or we need some discovery?

MR. TURNER: Your Honor, we don't plan to make a motion to dismiss. We've answered the complaint. We would like to undertake some discovery before we would consider any further motions.

THE COURT: Okay.

MR. TURNER: So we don't contemplate any motions at this time.

THE COURT: So what I'd like to do is have some sort of voluntary discovery as part of what we call tier one

discovery and I'm hopeful that that will take care of probably most of the discovery in this case.

Let me just go back for a moment and ask -- ask the defense lawyer about the issue of damages in the form of paying for calls. I know the plaintiff's complaint has some law in there. Do you have a comment on that law?

MR. TURNER: Your Honor, we understand that there's statutory damages of $500 per call, per automated call.

THE COURT: Does it matter whether or not the cell phone is charged to receive or not?

MR. TURNER: Our understanding is it doesn't matter under the law.

THE COURT: It doesn't matter. Okay. I just want to make sure it's not an issue.

MR. TURNER: The statute just says cell phone.

THE COURT: Okay. And let me ask the plaintiff's lawyer. You've heard what the defendant said about there not being calls made after the request to stop making phone calls. Right? Okay. Do you have records indicating that that is not so?

MR. GELLER: Your Honor, what we intend on doing is subpoenaing the phone records from my client's carrier. My client apparently did have screen shots of at least some of these calls but he may have accidentally deleted them. So we're going to be subpoenaing phone records as well as

conducting discovery from the defendant.

THE COURT: So I think those phone records are something that certainly defendant would want to take a look at. Also, who's the carrier?

MR. GELLER: I don't have that information in front of me right now, Your Honor.

THE COURT: What I'd like you to do is get that done as soon as possible because that can take some time for compliance.

MR. GELLER: Sure.

THE COURT: So why don't you do that. How quickly can you get that paperwork going?

MR. GELLER: I can probably get the subpoena out within a few days, Your Honor.

THE COURT: Great. So why don't I give you a week to do that. In terms of documents that I'd like the defendants to give over to the plaintiff. Certainly any documents showing communications that you had with the plaintiff about this account. So if you had notes about these phone calls asking to stop turn those over.

MR. TURNER: Yes. Your Honor, we actually have dozens of cases with opposing counsel and we sort of --

THE COURT: Know the drill.

MR. TURNER: -- usually hand over phone records. We have Excel files showing when calls were made and how they

were made and we can provide those.

THE COURT: Great. So let me ask the plaintiff. Other than what's been identified here and the type of thing that you're used to in this case, is there anything else you'd ask for at this point from the defendant?

MR. GELLER: Well, what we sometimes do in addition to subpoenaing our own carrier is to subpoena the carrier for the defendant because sometimes there may be a discrepancy. Sometimes the phone carrier for whatever reason doesn't have full records depending on how far back these calls go. So we ay request the court to direct the defendant to provide us with the name of the carrier that their defendant uses so we can subpoena their records as well.

THE COURT: Is there any reason to think your carrier doesn't have records?

MR. GELLER: Not initially, Your Honor, but from past experience there have been some situations where for whatever reason in some situations if it's -- for example, if the phone is a prepaid phone there's not -- sometimes there's not available records to subpoena.

THE COURT: Is it?

MR. GELLER: Again, Your Honor, that I have to determine. I have to double check with the client. I don't have that --

THE COURT: What's defendant's reaction to that?

MR. TURNER: I've never heard of our carriers being subpoenaed in these types of cases. I'm also -- I don't know for sure right now but I imagine we might have multiple carriers because calls will be placed from multiple locations and multiple entities if there's a collection agency involved.

THE COURT: I think it gets pretty complicated on your end.

MR. TURNER: Yes.

THE COURT: Why don't we see where we are once you get your records and then if you need to come back or talk to each other we'll work that out then but we're not going to order that right now.

Anything else that either side would want as part of the initial tier of discovery?

MR. GELLER: Nothing for plaintiff, Your Honor.

THE COURT: Okay. I'm assuming the defendant, you're going to want to depose the plaintiff?

MR. TURNER: We would plan to depose the plaintiff at some point as well as likely the plaintiff's wife who is the actual owner of the accounts on which calls were made.

THE COURT: But that's not going to be part of -- the first part of discovery?

MR. TURNER: No, that's not going to happen in phase one.

THE COURT: Okay. So the things that we've talked

about it looks like that you've got completion of phase one. It's a hard copy to read but it looks like it says January 3rd.

MR. GELLER: Yes, Your Honor.

THE COURT: Okay. Are you confident you can get that done, the documents we've talked about, get that done by January 3rd?

MR. GELLER: I think we should be able to.

MR. TURNER: Yes, Your Honor.

THE COURT: Well, that sounds fine to me. I'm looking at other dates. I don't think -- we're probably not going to have new parties. I'm hoping you might not need additional production of documents once these are subpoenaed and you see each other's. I don't see a lot of discovery in these cases. Does anybody disagree with me on that?

MR. TURNER: We tend to have our records. So except for whatever records the plaintiff has and perhaps records of ownership of the phone in question, phone number in question there's not too much else to do.

THE COURT: And you're going to get the plaintiff's phone records, right? So you'll see that.

MR. GELLER: Yes, Your Honor.

THE COURT: No experts in a case like this; right?

MR. TURNER: Don't anticipate experts, Your Honor.

THE COURT: So you're probably not going to have

that. Not a complicated case.

Here's what I want you to do. Can you send me -- I'm not going to have you come back into court right now but what I'd like you to do is send me a joint status letter and let's have that done -- let's say first week in April. What's the first say Tuesday in April?

So April 3, 2018 I'd like the parties to put on the docket a joint status letter. In that status letter let me know what you have done in discovery, whether or not you need anything additional. At that point I would imagine you'd be done. I would imagine there's no experts. Tell me what if anything you need to do to make the case trial ready or if it's settled or if you need help settling. Okay?

MR. GELLER: Yes, Your Honor.

THE COURT: So I'll hear from you on the 3rd.

MR. TURNER: Yes, Your Honor. One additional thing. We have -- the parties have agreed to abide by the court's standard form of confidentiality order. So we can submit that.

THE COURT: You can put that on the docket. We will so order it as soon as it pops up.

MR. TURNER: Great. Thanks, Your Honor.

THE COURT: Anything else?

MR. GELLER: Nothing for plaintiff, Your Honor.

THE COURT: Thanks for coming in.

MR. TURNER: Thank you.

(Proceedings concluded at 10:45 a.m.)

* * * * *

I certify that the foregoing is a court transcript from an electronic sound recording of the proceedings in the above-entitled matter.

Shari Riemer, CET-805

Dated: December 19, 2017